IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| WILLIAM MANGERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No:  2:18-cv-293 |
| | ) |
| LIFE INSURANCE COMPANY | ) |
| OF NORTH AMERICA, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Now comes the Plaintiff, WILLIAM MANGERSON, by his attorneys, MARK D. DEBOFSKY and DEBOFSKY, SHERMAN & CASCIARI, P.C., and complaining against the Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA he states:

*Jurisdiction and Venue*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, consists of group long-term disability ("LTD") insurance coverage and life insurance coverage underwritten and administered by the Life Insurance Company of North America ("LINA") for the benefit of employees of Hammond Group, Inc. ("Hammond"), which includes Plaintiff. Additionally, this action may be brought before the Court pursuant to 28 U.S.C. § 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2. The ERISA statute provides, at § 503 (29 U.S.C. § 1133), a mechanism for internal appeals of benefit denials. All required appeals have been exhausted.

3. Venue is proper in the Northern District of Indiana. 29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391.

*Nature of the Action*

4. This is an action seeking recovery of LTD benefits due under a group policy of LTD insurance (Policy No. SGD 602779) (hereafter the "LTD Policy," a true and correct copy of which is attached hereto as Exhibit "A") and a life insurance premium waiver claim ("LWOP") under a group life insurance policy ("Life Policy") (Policy SGM 602861) (a true and correct copy of which is attached as Exhibit "B"), sponsored by Hammond and administered and insured by LINA for the benefit of Hammond employees. This action is brought pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)); and Plaintiff's claim for prejudgment interest is brought either under that statute, or, in the alternative, under ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)). Plaintiff also seeks attorneys' fees pursuant to ERISA § 502(g) (29 U.S.C. § 1132(g)).

*The Parties*

5. William Mangerson ("Mangerson" or "Plaintiff"), age 61, is and was at the time of the benefit denial and at all times relevant hereto a resident of Hammond, Indiana; and the events, transactions, and occurrences relevant to Plaintiff's claim of disability took place predominantly within the Northern District of Indiana.

6. LINA was at all times relevant hereto doing business throughout the United States and within the Northern District of Indiana; and offered or delivered coverage to the Plaintiff in the State of Indiana and also administered benefits within this District.

7. Hammond was at all times relevant hereto doing business in the Northern District of Indiana; and offered or delivered coverage to the Plaintiff in the State of Indiana.

8. At all times relevant hereto, the LTD and Life Policies constituted "employee welfare benefit plans" as defined by 29 U.S.C. § 1002(1). Incident to his status as an employee at Hammond, Plaintiff received coverage under the LTD and Life Policies as a "participant" as defined by § 1002(7). This claim relates to benefits under the foregoing LTD and Life Policies.

### *Relevant Plan Provisions*

9. The LTD policy defines "disability" as follows:

**Definition of Disability/Disabled**

The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1. unable to perform the material duties of his or her Regular Occupation; and
2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation

After Disability benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
2. unable to earn 80% or more of his or her Indexed Earnings

The Life policy provides for continuation of coverage under a waiver of premium so long as the employee is "Disabled," which the policy defines as follows:

"Disability"/"Disabled" means because of Injury or Sickness an Employee is unable to perform all the material duties of any occupation which he or she may reasonably become qualified based on education, training or experience.

### *Statement of Facts*

10. Plaintiff was successfully employed on a full-time basis between 1998 and January 23, 2015 as a Facilities/Project Manager for Hammond Group, Inc. Mangerson had to cease

3

working on January 23, 2015 due to peripheral artery disease, other cardiovascular impairments, diabetes, and other co-morbidities; and he subsequently underwent a below the knee amputation of his left leg.  The circulation in Mangerson's right leg is also severely compromised.

11.     After he ceased working, Plaintiff applied for benefits under a short-term disability ("STD") plan offered by Hammond; and he subsequently applied for LTD and the LWOP benefits. LINA approved Mangerson's benefit applications and began paying him $3,374.00 per month in LTD benefits, which was subsequently reduced to $1,509.00 per month in 2016 following an award of Social Security disability benefits.  LINA also approved continuation of $169,000 in life insurance coverage under a waiver of premium on account of Plaintiff's disability.

12.     Despite an ongoing worsening in Plaintiff's medical condition and a lack of skills that would be transferable to any other occupation, LINA denied further LTD benefit payments beyond July 21, 2017; and also terminated LWOP payments at that time.

13.     Plaintiff submitted two appeals from the benefit denials prior to initiating this litigation.  Despite submitting extensive additional medical and vocational reports in support of his ongoing disability, along with arguments in support of the continuation of benefits, LINA refused to grant the appeals and reinstate Mangerson's benefits.

14.     Although LINA had the authority under the policies to compel Plaintiff to attend an independent medical examination, LINA never sought an evaluation.  Instead, it relied on frequently retained and highly biased doctors, nurses, and vocational consultants to perform paper reviews of the medical documentation and who issued reports that falsely misstated, misrepresented, and mischaracterized the medical evidence and Plaintiff's skills and vocational capabilities; and who also misstated the earnings potential of various jobs LINA contended Plaintiff was capable of performing.

15. In addition, LINA:

- Failed to provide a meaningful explanation for its rejection of the Social Security Administration's determination that Plaintiff was totally disabled;

- Favored adverse opinions of non-examining doctors even though every doctor who examined Plaintiff during the relevant time-period concluded he had such significant physical restrictions and limitations that he was effectively unemployable;

- Failed to perform an objective, fair, and complete vocational assessment and relied instead on flawed and irrelevant data or misstated or misrepresented relevant data.

16. In terminating Plaintiff's benefits and in refusing to reinstate his benefits following his appeals, LINA has failed to meet its fiduciary obligations under ERISA to provide Plaintiff with an accurate claim decision and to utilize "higher-than-marketplace quality standards" as required by the United States Supreme Court in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115, 128 S. Ct. 2343, 2350 (2008); and to provide Plaintiff with a "full and fair review" as required by ERISA § 503 (29 U.S.C. § 1133) and 29 C.F.R. § 2560.503-1.

17. LINA also engaged in procedural unreasonableness by failing to give due deference to Plaintiff's Social Security finding of disability despite financially benefiting from that award by recouping benefits previously paid and by reducing Plaintiff's benefits by the amount of the Social Security award. In addition to the requirement stated in *Glenn* and in other legal precedents placed upon insurers to appropriately consider a finding of disability made by the Social Security Administration, LINA entered into a binding agreement with the regulatory insurance authorities of every state in May 2013, well before Plaintiff's benefits were terminated, in which it bound itself to defer to an award of Social Security Disability Insurance benefits. Its decision to terminate

benefits flagrantly disregarded or misstated or mischaracterized those requirements.  (a true and accurate copy of the regulatory settlement agreement ("RSA") is attached hereto as Exhibit "C".)

18. All required pre-litigation appeals seeking the payment of LTD benefits have now been exhausted.  Therefore, this matter is ripe for judicial review.

19. The medical and vocational evidence submitted to Defendant during the course of Plaintiff's claim and appeal establishes that Plaintiff has been continuously unable to return to work since he first ceased working in 2015, and has thus met and continues to meet both the LTD and Life Policies' definitions of disability since that date.  Plaintiff is therefore entitled to receive all LTD benefits due from July 21, 2017 and reinstatement of his LWOP benefits.  Such LTD benefits must be ordered to continue for so long as Plaintiff continues to meet both of the policies' terms and conditions for the receipt of those benefits.

### *Relief Sought*

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against the Defendant and that the Court order the Defendant to pay all LTD benefits owed to Plaintiff in an amount equal to the contractual amount of benefits to which he is entitled pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B));

B. That the Court order reinstatement of the LWOP benefits;

C. That the Court order Defendant to pay Plaintiff prejudgment interest on all LTD benefits that have accrued prior to the date of judgment at an appropriate rate of interest pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) or ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3));

D. That the Court determine and declare that the Plaintiff is entitled to ongoing benefits subject to the LTD Policy and Life Policy's terms and conditions;

  E. That the Court award Plaintiff his attorneys' fees pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g); and

  F. That Plaintiff recover any and all other contractual and/or equitable relief to which he may be entitled, as well as the costs of this suit.

Dated: August 8, 2018        Respectfully Submitted,

               /s/ Mark D. DeBofsky
               One of the Plaintiff's Attorneys

Mark D. DeBofsky
DeBofsky, Sherman & Casciari, P.C.
200 W. Madison St, Suite 2670
Chicago, IL 60606
(312) 235-4880 (phone)
(312) 929-0309 (fax)